# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| ANTIONETTE GUTIERREZ for S.M., | CASE NO. 1:14-CV-00920 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE VECCHIARELLI |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

Plaintiff, Antionette Gutierrez ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Commissioner of Social Security ("the Commissioner"), denying the application of Plaintiff's son, S.M. ("Claimant"), for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. ("the Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I.     PROCEDURAL HISTORY

On August 6, 2010, Plaintiff filed an application for SSI on behalf of Claimant, alleging a disability onset date of July 28, 2010.  (Transcript ("Tr.") 13.)  The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ").  (*Id.*)  On December 14, 2012, an ALJ conducted Claimant's hearing.  (*Id.*)  Claimant was represented by an attorney.  (*Id.*)  On December 28, 2012, the ALJ found Claimant not disabled.  (Tr. 10.)  On March 5, 2014, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the

Commissioner's final decision. (Tr. 1.)

On April 29, 2014, Plaintiff filed a complaint on behalf of Claimant challenging the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 14, 15.)

Plaintiff asserts the following sole assignment of error: The ALJ erred in failing to find that Claimant had a marked limitation in the domain of interacting and relating with others and in the domain of health and physical well being.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Claimant was born in July 2010 and was a newborn/young infant on the date Plaintiff filed Claimant's application for SSI. (Tr. 16.) Claimant had not engaged in substantial gainful activity since the application date. (*Id.*)

### B. Medical Evidence and Agency Reports

Claimant was born in July 2010 with tracheoesophageal fistula and esophageal utresia, which required surgical repair. (Tr. 18, 214-215.) By the time he was six months old, Claimant developed tracheomalacia at the surgery repair site and suffered from course raspy wheezes and a chronic cough. (Tr. 18, 348-349, 383-384.)

Claimant saw Khalid Akbar, M.D., on September 16, 2010, for cough and feeding problems. (Tr. 255.) After an examination, Claimant was assessed with an acute upper respiratory infection, hoarseness, and reflux and was described as a fussy infant baby. (Tr. 257.) Dr. Akbar saw Claimant on October 1, 2010, with complaints of a cough. (Tr. 246.) Plaintiff saw Dr. Akbar on December 20, 2010, for a follow-up after Claimant had an overnight stay in the hospital due to bronchitis. (Tr. 284.) Claimant was still suffering from

a barking, hacking cough. (*Id.*) An examination revealed bilateral diffuse coarse breath sounds with mild wheezing stridor, and respiratory effort was rapid and shallow. (Tr. 286.) Claimant was assessed with bronchiolitis due to respiratory syncytial virus (RSV), croup, and acute upper respiratory infection. (*Id.*) Claimant returned to Dr. Akbar on January 6, 2011, with a barking, hacking cough. (Tr. 279.) On examination, Claimant's respiratory effort was normal, he had no gastrointestinal issues, he fed normally, and he was thriving. (Tr. 279-281.)

Dr. Akbar referred Claimant to the Cleveland Clinic for his noisy breathing. (Tr. 345.) An examination of Claimant on January 11, 2011, revealed mainly expiratory stridor. (Tr. 346.) A nasolaryngoscopy revealed mild laryngomalacia prolapse of arytenoids. (*Id.*) Claimant returned to the Cleveland Clinic on February 7, 2011, for assessment of his wheezing. (Tr. 348.) Treatment notes indicated that Claimant "has done well." (*Id.*) He had been gaining weight, he could feed without coughing or choking, he rarely spit up, he slept well without snoring, and he did not have a chronic cough but did have a "rare occasional daytime cough." (*Id.*) It was noted that Claimant had good growth and development. (*Id.*) An exam revealed honking, respiratory wheeze when excited and supine. (*Id.*) At that time, Dr. Frederick Royce, M.D., recommended a "wait and watch" approach, as Claimant did not appear to have a tracheal pouch, nor did he have a severe obstruction. (Tr. 349.)

On March 16, 2011, Claimant treated with Dr. Akbar for congestion. (Tr. 333.) Claimant had a normal respiratory examination including clear lungs and normal respiratory effort. (Tr. 335.)

Dr. Royce saw Claimant on June 8, 2011. (Tr. 354.) Treatment notes indicate that

Claimant has "done well," but that he had a chronic cough and trouble with changes in temperature or humidity. (*Id.*) An examination revealed raspy monophonic wheezes. (Tr. 355.) Dr. Royce suspected that Claimant's wheezes and cough were mostly due to tracheomalicia at the repair site. (Tr. 356.)

On August 12, 2011, Claimant had a normal one-year well exam with no concerns or respiratory problems noted. (Tr. 322-324.)

On October 18, 2011, Claimant underwent a laryngoscopy with bronchoscopy due to his chronic stridor which was exacerbated during activities and illness. (Tr. 392.) The bronchoscopy revealed significant tracheomalacia. (Tr. 372.)

Plaintiff returned to the pulmonary clinic on October 20, 2011. (Tr. 360.) It was noted that Claimant had a loud barking cough and tired when walking. (*Id.*) Claimant had frequent nocturnal and morning coughs, and his breathing was labored when he had a cold. (*Id.*) An examination revealed raspy coarse wheezing and honking cough. (Tr. 361.)

Claimant treated with Dr. Akbar on December 12, 2011, for follow-up of previous complaints of cough and wheezing. (Tr. 317.) Claimant's mother reported that Claimant was "doing much better." (*Id.*) On examination, Claimant was positive for cough and negative for choking and wheezing. (*Id.*) Dr. Akbar assessed respiratory syncytial virus (RSV) bronchiolitis. (Tr. 318.)

Claimant presented to the pulmonary clinic on June 21, 2012, for evaluation of his tracheomalacia and chronic cough. (Tr. 405.) An examination of Claimant noted stridor when excited. (Tr. 406.) Claimant was assessed with tracheomalacia and chronic cough. (Tr. 407.)

On October 17, 2010, Claimant saw Dr. Akbar for a cough and fever that had

persisted for the past seven days. (Tr. 398.)  On examination, Claimant was positive for fever, appetite change, fatigue, congestion, rhinorrhea, postnasal drip, and cough.  (*Id.*) Dr. Akbar noted that Claimant was "still not talking more than 15-18 words, no 2 word sentences."  (Tr. 399.)  Dr. Akbar assessed acute respiratory infection and speech developmental delay. (Tr. 400.)

Dr. Royce saw Claimant at the pulmonary clinic on October 17, 2012.  (Tr. 410.) Dr. Royce noted that Claimant was "doing a little better than last year" but "still wheezes and tires when climbing steps" and had exercise-induced coughs.  (*Id.*)  Claimant's mother reported that Claimant had no trouble swallowing liquids or solids, but soft foods like macaroni and cheese were harder for him to swallow.  (*Id.*)  Claimant had no morning or evening coughs and did not have doctors' or emergency room visits.  (*Id.*)  On examination, Claimant had junky bilateral breath sounds and coarse monophonic wheeze. (Tr. 411.)  Dr. Royce's impression stated: "[Claimant] is improving with growth, but slowly. There continues to appear to be an asthmatic component- Improves markedly with prednisolone and with Albuterol prn.  Airway clearance is normal when well."  (Tr. 411-412.)

On September 12, 2012, Claimant underwent a "Comprehensive Evaluation and Assessment for Program Planning."  (Tr. 198-205.)  The evaluation team coordinator was Jennifer Doseck, Early Intervention Specialist, B.A. Speech Pathology.  (Tr. 198.) Claimant's mother told the evaluators that Claimant said "mommy," "daddy," "hi," "bye," "cheese," and some family members' names.  (Tr. 202.)  The evaluators also observed that Claimant waved bye-bye, used gestures to indicate what he wanted, used variations in his voice, and sometimes imitated speech sounds.  (*Id.*)  After testing, the evaluators

5

diagnosed Claimant with receptive and expressive communication delays, concluding that he was at least 25% behind and was eligible for early intervention services. (Tr. 202, 204.) The evaluators concluded that Claimant needed speech therapy to extend his vocabulary so that he could express his wants and needs more effectively to his parents and others that interacted with him. (Tr. 204.) The evaluators further concluded that Claimant's personal and social skills were appropriate for his age. (Tr. 202-203.) They found that Claimant showed affection toward people; responded positively to adult praise; greeted familiar adults spontaneously; enjoyed having stories read to him; enjoyed playing with other children; followed directions relating to his daily routine; imitated adult and children activities; and showed pride in his accomplishments. (Tr. 202.)

**C. Hearing Testimony**

    **1. Plaintiff's Hearing Testimony**

Claimant's mother, Plaintiff, testified at Claimant's hearing. Plaintiff alleged that Claimant was disabled due to esophagus problems and communication delays, and that he suffered from coughing, shortness of breath, and an inability to communicate effectively. (Tr. 35-39, 50.) According to Plaintiff, Claimant had loud breathing during weather changes or when he was sick. (Tr. 36.) She also stated that Claimant had a cough whenever he was sick, which doctors said Claimant would eventually outgrow. (Tr. 37.) She stated that Claimant got sick every two or three months. (*Id.*) Plaintiff reported that she gave Claimant breathing treatments twice a day and sometimes in the middle of the night. (Tr. 49-50.) She testified that Claimant spoke a few words but mostly communicated with grunts and gestures. (Tr. 41, 45.) Plaintiff also stated that Claimant had trouble swallowing certain foods because they became stuck in his airway. (Tr. 51-

6

52, 54.) Plaintiff testified that Claimant bullied his younger sister but played well with his two older siblings. (Tr. 40, 45.) She also reported that Claimant attended daycare and was mean at first, but that he started to get better. (Tr. 45.)

### III. STANDARD FOR DISABILITY

An individual under the age of 18 shall be considered disabled if he has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted, or can be expected to last, for a continuous period of not less than 12 months. *See* 42 U.S.C. § 1382c(a)(3)(C)(i); *Miller ex rel. Devine v. Comm'r of Soc. Sec.*, 37 F. App'x 146, 147 (6th Cir. 2002) (per curiam). There is a three-step analysis for determining whether a child-claimant is disabled. First, the Commissioner must determine whether the child is engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(a); *Miller ex rel. Devine*, 37 F. App'x at 148. Second, if the child is not engaged in substantial gainful activity, the Commissioner must determine whether the child suffers impairments or a combination of impairments that are "severe" and that are expected to result in death or have lasted or are expected to last for a continuous period of not less than 12 months. *See* 20 C.F.R. § 416.924(a); *Miller ex rel. Devine*, 37 F. App'x at 148. Third, if the child suffers a severe impairment or combination of impairments that meet the Act's durational requirement, the Commissioner must determine whether they meet, medically equal, or functionally equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). *See* 20 C.F.R. § 416.924(a); *Miller ex rel. Devine*, 37 F. App'x at 148. If the child's severe impairment or combination of impairments meets, medically equals, or functionally equals an impairment in the Listings, the child will be found disabled. *See* 20 C.F.R. §

416.924(a); *Miller ex rel. Devine*, 37 F. App'x at 148.

To determine whether a child's impairment functionally equals the Listings, the Commissioner assesses the functional limitations caused by the impairment in six domains of functioning:  (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926a.  An impairment functionally equals the Listings if the child has a "marked" limitation in two domains, or an "extreme" limitation in one domain.  20 C.F.R. § 416.926a(a).  A "marked" limitation is one that "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  An "extreme" limitation is one that "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i).

### IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant was born in July 2010.  Therefore, he was a newborn/young infant on August 6, 2010, the date the application was filed, and is currently an older infant.

2. The claimant has not engaged in substantial gainful activity since August 6, 2010, the application date.

3. The claimant has the following combination of severe impairments: status-post tracheoesophageal fistula repair with tracheal malacia and chronic cough, asthma, and receptive and expressive communication delays.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. The claimant does not have an impairment or combination of

>    impairments that functionally equals the severity of the listings.
>
> 6. The claimant has not been disabled, as defined in the Social Security Act, since August 6, 2010, the date the application was filed.

(Tr. 25.)

## V. LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. Id. However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. Brainard v. Sec'y of Health & Human Servs., 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. White v. Comm'r of Soc. Sec., 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Brainard, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. Ealy, 594 F.3d at 512.

9

> **B.     Plaintiff's Assignment of Error**
>
> **1.     The ALJ Erred in Failing to Find that Claimant Had a Marked Limitation in the Domain of Interacting and Relating with Others and in the Domain of Health and Physical Well Being.**

Plaintiff argues that, in analyzing the domains of functioning, the ALJ provided inadequate reasoning and support for his findings in the areas of interacting and relating with others and health and physical well being.  The Commissioner responds that substantial evidence supports the ALJ's conclusion that Claimant has less than marked limitation in these two domains.

Plaintiff's argument is not well taken, as substantial evidence supports the ALJ's conclusion that Claimant did not have a marked impairment in any of the six domains.  In assessing the six domains, the ALJ properly considered all of the relevant evidence, including the medical evidence of record; Plaintiff's testimony of Claimant's condition to which the ALJ attributed substantial weight; and the opinions of state agency medical professionals, who found that Claimant had less than marked limitation in health and physical well-being and no limitations in any of the other five domains.  (Tr. 16-25, 58-73.)

> **a. Interacting and Relating with Others**

The domain of interacting and relating with others considers how well a child is able to initiate and sustain emotional connections with others; develop and use the language of the child's community; cooperate with others; comply with rules; respond to criticism; and respect and take care of the possessions of others. 20 C.F.R. 416.926a(i).  After describing the relevant regulations, the ALJ made the following conclusion:

> The claimant has less than marked limitations in interacting and relating with others.  At hearing, his mother testified that the claimant has difficulty communicating with others and often grunts

> or makes other noises rather than using words. (Hearing Testimony.) During the speech evaluation, the claimant also exhibited a significant delay in both receptive and expressive communication skills. However, at that time, his mother reported that the claimant could use some words, such as mommy, daddy, hi, bye, and cheese. The claimant also waves in greeting, responds to varying tones of voice, and associates spoken words with familiar objects or actions. (Exhibit 16E/6.) At hearing, the claimant's mother also testified that, aside from his delayed speech, the claimant generally gets along well with adults and other children. (Hearing Testimony.) As such, the undersigned finds the claimant has less than marked limitation in interacting and relating with others.

(Tr. 22.) Thus, the ALJ considered the relevant evidence relating to the domain of interacting and relating to others and concluded that although Claimant had some limitation in this area, he was not *markedly* limited. (*Id.*)

Plaintiff maintains that the ALJ's analysis of Claimant's limitations in the domain of interacting and relating with others is deficient, because the ALJ did not discuss Claimant's test scores regarding his development in receptive and expressive communication. A review of the ALJ's decision, however, indicates that the ALJ adequately considered the evidence relating to Claimant's speech and expression in his analysis of Claimant's record. The ALJ acknowledged that in September 2012, Claimant was diagnosed with receptive and expressive communication delays and was found to be eligible for early intervention services.[1] (Tr. 18.) While Claimant demonstrated significant

---

[1] Plaintiff maintains that the ALJ was required to expressly acknowledge in his decision evidence from the speech evaluators that Claimant was 25% behind in his speech development. (Pl.'s Br. 9.) The Court disagrees. It is clear from the ALJ's decision that he considered evidence from the speech evaluators. Plaintiff has failed to show that the ALJ's failure to expressly acknowledge Claimant's test scores constitutes error. "[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc.*

11

delays in speech and communication, the ALJ noted that Claimant had some communicative abilities in that he could say certain words such as "mommy, daddy, hi, bye, and cheese"; he greeted others; he responded to tones of voice; he associated spoken words with familiar objects or actions; and he responded to gestures. (*Id.*) Speech evaluators also reported that Claimant used variations in his voice and sometimes initiated speech sounds. (Tr. 202.) Moreover, in assigning only "moderate weight" to the opinions of the state agency medical consultants who found that Claimant had no limitations in interacting and relating with others, the ALJ explained that "evidence received at the hearing level, including [Claimant's] recent diagnosis of communication delays and the mother's hearing testimony, indicates that the claimant is more limited than suggested by the consultants." (*Id.*) Thus, contrary to Plaintiff's assertion, the ALJ adequately considered the medical evidence of Claimant's speech and language delays when determining the degree of Claimant's limitation in the domain of interacting and relating to others.

Plaintiff also maintains that the ALJ's analysis of Claimant's limitations was deficient, because the ALJ failed to "accurately report" Plaintiff's testimony. (Plaintiff's Brief ("Pl.'s Br.") 9.) According to Plaintiff, the ALJ's conclusion that Claimant had less than marked impairment in the domain of interacting and relating with others is not supported by substantial evidence, because Plaintiff testified that her son bullies his one-year-old sister and was "mean and bad" at his daycare. This argument is not well taken. The ALJ noted that he gave substantial weight to the testimony of Plaintiff, as it "appeared

---

Sec., 167 F.App'x 496, 508 (6th Cir. 2006) (citations omitted).

12

credible and consistent with the other evidence," but ultimately determined that Plaintiff's testimony did not support a finding that Claimant is disabled.  (Tr. 19.)  With regard to Plaintiff's testimony, the ALJ stated: "At hearing, the claimant's mother also testified that, aside from his delayed speech, the claimant generally gets along well with adults and other children."  (Tr. 22.)  The ALJ's characterization of Plaintiff's testimony is reasonable, as Plaintiff did testify that, although Claimant bullied his younger sister, he played well with his two older siblings, and while he was "mean and bad" at daycare at first, his behavior has since improved.  (Tr. 40, 45.)  As substantial evidence, including the medical reports and Plaintiff's hearing testimony, supports a finding of less than marked limitation in the domain interacting and relating with others, Plaintiff has failed to show that the ALJ has committed reversible error.

### b. Health and Physical Well Being

The domain of health and physical well being considers the cumulative physical effects of the child's physical and/or mental impairments along with the associated treatments.  20 C.F.R. 416.926a(l).  This domain addresses how recurrent illness, the side effects of medication, and the need for ongoing treatment affect the child's health and sense of physical well-being.  Id.; SSR 09-8p.  After describing the relevant regulations, the ALJ made the following conclusion:

> The claimant has less than marked limitation in health and physical well-being. The medical records reveal the claimant has chronic exercise induced cough, some wheezing, and a raspy voice. (Exhibits 11F/16-17; 13F/5, 10.) Additionally, he has some difficulty swallowing soft foods due to his esophageal problems, and at hearing, his mother testified that the claimant receives breathing treatments twice each day. (Exhibit 13F/10, Hearing Testimony.) However, medical providers state the claimant has no significant activity limitations, and recent examination notes

13

> show good growth and development. (Exhibit 11F/4.) In June of 2012, the claimant's parents also reported that he was doing "very well overall" and was experiencing only mild shortness of breath with activity. (Exhibit 13F/5.) As such, the undersigned finds the claimant has less than marked limitation in this domain.

(Tr. 25.) Thus, the ALJ considered the relevant evidence relating to the domain of health and physical well being and concluded that although Claimant had some limitation in this area, his limitation did not rise to the level of marked.

Plaintiff maintains that the ALJ erred in his evaluation of Claimant's health and physical well being because he failed to discuss Claimant's frequent illnesses and upper respiratory infections.  This argument has no merit.  In his decision, the ALJ adequately considered the objective medical evidence documenting Claimant's physical condition, noting that Claimant was born with tracheoesophageal fistula and esophageal utresia, which each required surgical repair; that he has since developed tracheomalacia at the repair site as well as a coarse wheeze and chronic cough; that more recently, medical providers have noted an asthmatic component to the claimant's respiratory problems; and that in September 2012, Claimant was diagnosed with receptive and expressive communication delays and found eligible for early intervention services.  (Tr. 18.)  After acknowledging that Claimant suffered from some degree of physical impairment, the ALJ determined that the weight of the evidence did not support a finding of disability, offering specific examples from the record:

> [A] September 2010 upper GI study showed no recurrence of the fistula, and multiple examinations from early 2011 reveal generally normal findings.  In January of 2011, he had no gastrointestinal issues, and the claimant was feeding normally and thriving. (Exhibits 7F/1, 9F/8.)  In March and August of 2011, he also had normal well child examinations.  (Exhibits 9F/4, 10F/20.) Additionally, an October 2011 chest X-ray was normal, and more

14

> recently exam notes show only mild shortness of breath and coughing with no significant activity limitations. (Exhibit 13F/5.) Further, the results of the September 2012 developmental evaluation indicate appropriate personal/social skills, as well as appropriate gross and fine motor skills. (Exhibit 16E/5-6.)

(*Id.*)  The ALJ also explained that Claimant's daily activities are not limited to the extent one would expect of a disabled child, noting that Claimant enjoys age-appropriate activities such as coloring and listening to stories and attends an in-home daycare and enjoys playing with other children. (*Id.*)  The ALJ further noted that Claimant has met many developmental milestones on target with his age. (*Id.*)

Substantial evidence in the record, discussed by the ALJ in his decision and summarized above, supports the ALJ's conclusion that Claimant has less than marked limitation in health and physical well being.  While Plaintiff cites to medical evidence indicating that Claimant suffered from respiratory infections on several occasions, the existence of such evidence alone is not an appropriate reason to reverse the ALJ's decision:  An ALJ's decision that is supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.  Accordingly and for the foregoing reasons, Plaintiff's assignment of error does not present a basis for remand.

## VI. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: May 13, 2015